May it please the Court, I'm Brian Eiler here on behalf of Appellant Gress. This is not a case about coaching baseball. And I'm not the person that said that. I quote Conover CEO Brad Green, quote, I think it's great that Rick coached. Again, Conover CEO. No, it's a case about whether somebody who is hired and paid to be an employee is going to give their time and effort to their employer. I mean, the answer would be the same if the activity were sitting on the porch and reading novels during work time. My point exactly, Your Honor. But the coaching was not on his own time. That's the key to the case, it seems to me. And I don't understand, honestly, why the employer was happy about it to begin with, but they don't have to keep being happy about it, do they? They don't have to keep being happy about it, but if the reason that they become unhappy about it and the reason that they change their mind on it is because of Mr. Gress's protected conduct, that's retaliatory. That's where I don't see the nexus, because it seems to me that this is a person who, in terms of time and effort, really was taking advantage of the employer to do things he thought were more fun than working. Well, Your Honor, the numbers, as I point out in the briefing, just don't support that position. That's Conover's position. Conover's position clearly is it's not about coaching, it's about his work and his interference, that this time off is interfering with his employment activities. But as Conover's office manager, Kerry Records, said, to defend the claim that it was, in fact, interfering with his employment activities, the numbers show it. But why is that necessary? He was told, don't do this anymore. We want you to give your full time to us. Even if the numbers don't show it, there's no statutory requirement that he be allowed to coach or read novels or do any particular thing. He was told not to do it, and he did it anyway. Why isn't that the end of the matter? Well, because this is exactly the same as saying you shall not have flex time. This is exactly the same as saying instead of coming in at 8.30, from now on you have to come in at 8 a.m. And an employer can say that. But not if it's motivated by retaliation for the assertion of legally protected rights. What was the legally protected right that was asserted in this case? The first legally protected right was the right to be reasonably accommodated for his disability when he broke both wrists. He was, and he was accommodated. He was. But the fact that he was accommodated doesn't mean that the employer can be unhappy about it and doesn't prevent the employer from retaliating because he demanded the reasonable accommodation. What evidence is there in the record that the real reason for the termination was because Mr. Gress needed accommodation? What evidence is there in the record to support that statement? The April 5 email, Your Honor. And that's the April 5 email that references the April 4 meeting at which Conover discussed four matters with Mr. Gress. Number one was released to return to work. That was from his broken wrists. That relates to the reasonable accommodation. Number two was FMLA because his daughter had a brain condition that required surgery. Number three was giving him the check that they had illegally withheld that he testified he had to fight, quote, tooth and nail, unquote, to get. Number four is we don't want you to coach this year. So, I mean, you're. Because we want your time as an employee. Well, Your Honor, there is no. They wanted more of him, not less of him. That's what I think is missing from your analysis and that there were accommodations made and the timing of the termination was after he signed on to coach again. It was like, we told you not to do that. Well, Your Honor, the reason for telling him not to coach again must be important. Otherwise, any employer can find any subject on which it knows an employee is not going to submit and say, gosh, don't do that anymore, and then they can terminate as soon as they do that. But he could have saved his job just by saying he wasn't going to coach. I don't get that that's retaliation when all he had to do is say, okay, I'm not going to coach this year. I don't get retaliation on this. If the law is, I may be wrong, if the law is Conover could write in a letter, we are directing you not to coach out of retaliation for your assertion of your legal rights, period. You would have a different case. You don't have that case because that's not in the record. There is no statement by any of the Conover people. But that goes to the evidence and whether there's a reasonable inference that that's the actual motive behind the line they drew in the statement. Even if there were no, if he had not engaged in any protective conduct and they told him you cannot coach on company time. That's a different case. But that's okay. They don't have to let him, right. So it doesn't matter how strongly held it is. I mean, if I have a clerk who's passionate about being a marathon runner, I don't have to let them spend four hours every day or four hours three times a week or whatever it is if I don't want to because they're supposed to be working for me during that time. So it doesn't matter what the passion is. It seems to me that the question is does an employer have the right, if they wish to assert it, to demand full-time effort regardless of the numbers. I mean, my clerk might say to me, listen, I'm faster than other people at getting my work done. And I might say, well, that's interesting, but I'd like you to be here. I have that right, presumably. You have the right, but do you have the right to make that decision in retaliation for the assertion? Well, no, but see, you say that, but I guess I just also don't. Both things happened. He was injured and his daughter had problems. Those are true things. But what's missing to me is any nexus between that and the request that he devote his full time to his employment. So the 1, 2, 3, 4 in the e-mail is not a nexus. It's not. It's a list, but that isn't. The statement. So if I said we have four things to discuss, one are dogs, the next are computers, the third is Kleenex, do they have a connection or is that a list? Well, when you say elsewhere in the e-mail, and I quote, Conover has been more than supportive of Rick, including these last several months. That's true, isn't it? He's been recovering from his surgeries. Wasn't that true? It was only true because he forced them to reasonably accommodate him. Remember, they were pressing Mrs. Gress to sign short-term disability when he broke his wrist rather than reasonably accommodate him. He refused. That's when this sequence of events started. That's what they mentioned. A lot of people want short-term disability. So that is, I mean, to me that is a nefarious thing, that a company would offer short-term disability. And if he elected not to take it, then they didn't force him to take it. Well, he elected not to take it, and they came back time and time and time again, as reflected in Appellant's opening brief. And pressured him to take it. Why would they do that? If it's only, oh, well, it's here if you want it, then no, you don't want it, okay. That's not what happened here. They came time and time and time again and pressured him, as reflected by Mrs. Gress's statements at the time. And he said, no, you will reasonably accommodate me. And those aren't minor accommodations, as I also reflect. So that's when this started. The causal connection is, I'm going to exercise my legal rights. What this court has to decide is whether an employer can, I mean, if the law is, we can have all the retaliatory motive in the world, as long as we draw the line in the sand that we otherwise would have the right to draw. They're not, you know. The difficulty with this is that the termination was based on insubordination. The fact that he was clearly told, don't coach baseball. That just, I don't see a nexus between that and retaliation. If the employer clearly tells you, don't spend company time coaching baseball, and you say, you let me do it before and I'm going to do it again, I guess I don't see a retaliation in that. But you're assuming there's a set daily work schedule, and that's not the record in this case. And if that directive itself is retaliatory, what is an employee to do? Submit to the retaliation is what you're telling the employees, right? If you assume, as is a reasonable inference from the evidence I believe, if you assume that that direction, don't coach baseball, is in retaliation for Rick Gress forcing Conover to pay the illegally withheld bonus that he had earned, then he's just supposed to submit because Conover would otherwise have the right to change his schedule in that way? You've exceeded your time, but we used an awful lot of it, so we'll give you some time for rebuttal as well. Thank you, Your Honor. Good morning, Your Honor. May it please the court, counsel. My name is Steve Goldstein, representing Conover Insurance. I gave opposing counsel a hard time, but I'm going to give you a hard time too. It seems to me that the firing is pretty clear because he was told, don't coach. He decided to coach anyway, and so he was fired. But I think that, for me, the harder question on this record is, why did they impose that condition in the first place? Because he had coached previously without complaint, and the only apparent change in the world from the time it was permissible to the time it was forbidden was a series of at least arguably protected events. The temporary disability, leave for his daughter's illness, and so forth. So why isn't there an issue of fact with regard to the initial imposition of this change? Two things, and I'll address them in order, Your Honor. First is the reasons, in the record, there are a number of reasons why they didn't want him to coach. The first was that his assistant, Jill Rawlings, told management that he was unavailable in 2009 when he coached baseball. Now, whether he was or was not available in 2009 isn't the important issue. It's undisputed that his assistant manager told management that he was. She was concerned about it. The second issue is that the assistant with more experience, Jill Rawlings, I'm sorry, Rita Fryer, was on maternity leave in the summer of 2010. If he was going to be unavailable coaching baseball, he only had one assistant to back up, and it was a less experienced assistant. The third reason was there were times he was unavailable when he fractured both his wrists. The employer kind of reaccommodated him, provided a driver, provided, well, his wife drove, provided somebody to help him write down things, so when he visited, but there were times. But the timing is also, I mean, we have cases that say that timing alone can be indicative of motivation. And so the imposition, and the employer lists good reasons. The question for us is on this procedural posture, is there an issue of fact remaining as to pretext? He says, look, I have these problems, physical problems. Then I was told a brand-new condition of my employment because you used to think it was great. Now you think it's not great. You give a reason, and then the question is whether the timing would permit a finding of pretext. The reason it does not is because having a second job is not a protected activity. No, it isn't. And if you had never allowed him to do it in the first place, we wouldn't be here. The question is, for whatever reason, you gave him a pass earlier. It may have been foolish to do so, but you did. So his conditions changed. He had no right to do it, but you made a change in the expectations that were placed on him. I have no idea what that sound is. It sounds like a child or an ambulance. I'm not sure which. I'm not sure either. It's a gremlin. I'm losing my train of thought, unfortunately. I understand the question, Your Honor. Right. So having given him this grace to begin with, it's like giving a bonus you don't have to give. You give a bonus for a few years, and then you say, this year only you are not going to get a bonus. You don't have to give the bonus, but why did you change? And I guess that's my issue. We gave a number of reasons why the change, but the reason you don't have a question of fact and dispute as to motive is because it's simply not a protected activity. An employer can tell an employee, you cannot have a second job. The employer doesn't need to give a reason. The employer can just say, look, I changed my mind. I'm not going to give you a reason why we don't want you to get a bonus. Is that really true? Well, I guess compensation may be different, but let's say you have an office that operates from 8 to 5 every day, and as just a kindness to somebody, you say, you know, for you, you can come in at 9. I know you have a long commute, and you can come in later than other people. You don't have to do that, but you do, and then you decide not to. So far, so good, but can you decide not to because the person has undergone a religious conversion, and you don't like their religion? I mean, can you make an otherwise permissible alteration not permissible? Under Washington law, to establish a retaliation claim, there has to be adverse employment action. Adverse employment action is well defined in the statute as changing the terms and conditions of your employment. There are situations where changing hours can, and counsel alluded to them, and the Supreme Court has also indicated that there are situations where changing hours could be adverse employment action. Cutting pay is adverse employment action. Putting somebody on a midnight shift when they can't perform that shift is adverse employment action. Telling somebody that they cannot work a second job is not. The employer can change his or her mind, and an example would be, for example, for a judge. If the judge has a law clerk who is out for a good medical reason and takes FMLA leave and is gone for three months, and then when they come back, the law clerk says, you know what, I want to take vacation. It's September, and last year I took vacation in September, and so I'm going to take vacation in September now, and the judge says, well, no, you can't do that. You've been gone for three months. We need you. Well, you know, you let me do it last year. Is there a question of fact and dispute there that the employer can tell that person, no, you can't take vacation, and it doesn't matter what the motive is. That's not an adverse employment action there. If the employee takes the vacation anyway, they have disobeyed a direct order of the court and are terminated. It was focusing on the imposition of the condition in the first instance because once you've given the order, you're not free to challenge it by just simply disobeying it. You have to challenge it in some other way. I think the thing that could have been done here, the employee, the plaintiff could have said, okay, you know what, I disagree with you. I think this is a bad mistake and may be sued for some sort of disparate treatment or for retaliation, but you cannot tell the employer, no, I want to work a second job. I don't care what you say. And, in fact, the contract that he signed said that he would spend all of his working time for the employer, and they can rely on that contract. Well, except in this case it's complicated a little because he was allowed to have a second job previously. Correct, but does that mean if you give an employee something extra one year, you can never change your mind again? Or if you then engage in some sort of protective activity, you can't change your mind anymore because once you've taken a medical leave, all bets are off. We can't change your conditions of employment anymore. That makes it a little more dicey for the employer because if you, I mean, the proximity, the temporal proximity does raise a question as to whether or not the adverse action was taken in retaliation for exercise of a right. If he had taken FMLA leave and came back and someone said, well, because you took FMLA leave, you can't coach baseball, but somebody who didn't take FMLA leave can, that might be a problem. Then you would have disparate treatment, and you would have a claim that I was treated differently. We don't have any of that evidence here. Well, even if they said because you took FMLA leave, you can't coach baseball, you don't think that would raise a question of retaliation? No, because one of the reasons they were concerned was, in my example of the judge, the reason they don't want, the judge doesn't want the clerk to take vacations because the person took FMLA leave and was unavailable for three months. No, because the person was absent. That's different. Being absent is different than taking FMLA leave because if you terminate somebody because they exercised their right under the law, that would be retaliation, wouldn't it? It depends. It has to be, the retaliation has to be for adverse employment action. It has to be something that is related to your terms and conditions of employment. Having a second job is not. What kind of employment contract do you have? I'm sorry, Your Honor? What kind of employment contract did he have? He had a written contract that's referred to in the papers. It's at ER 16 through 25, I think. On page 6 of our brief, we quote from it, agents shall devote his or her entire business time, attention, and expertise. How long did it guarantee his employment? Well, it was signed originally in 2001, and then it was signed again in 2009. But wasn't it at will, though? Employment was at will. That's what I'm getting at. Wasn't it at will? Yes, it's not for a specified period of time. So it could have been terminated at any time without any reason. Right. Isn't that correct? That's correct. So why are we going into the reasons? They could have terminated at any time. Well, in any employment at will context, there's still protections under the law. Title VII, you know, a variety of protections. Yeah, but you don't need them. I don't believe we need them here because it is an at will employment and there wasn't any protected activity, again, for which adverse employment action was taken. Right. Thank you, counsel. You've used your time. Thank you. We'll give you a minute for rebuttal because we took a lot of it with questions. This is not disparate treatment. We don't have to show that they didn't retaliate against someone else for exercising legal rights. All we have to show is that the action of changing the work schedule, saying you are required to be here all of these hours instead of going and coaching, was motivated by retaliation. And I quote McGinnis, this is not new law. McGinnis says, and I quote, we have held that very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive. Any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact finder. When the evidence is direct or circumstantial, consists of more than the McDonnell-Douglas presumption, the factual question will almost always exist with respect to any claim of a nondiscriminatory reason. Any indication. I would submit, Your Honors, that there's more than just any indication. The excuses, the reasons they give for drawing the line in the sand on coaching have been impeached. I go in great detail in the briefing on that. Was the fact of pay relevant? No. Not to one of the officers, Brad Green. It was supposedly according to Connie Morrow. Were the numbers down? Not according to any record. This is McGinnis. Counsel, you've exceeded the time that we've allowed you. We, I think, understand well your arguments and we appreciate them. We thank both counsel and the cases submitted. We will adjourn for this session. Thank you, Your Honors.
judges: Noonan, Graber, Rawlinson